**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **25-cr-00138 (RJL)** |
| **DREMALE VANTERPOOL** | **:** | |

### DEFENDANT VANTERPOOL'S
### <u>MOTION TO DISMISS INDICTMENT</u>

On July 11, 2025, the Superior Court for the District of Columbia dismissed *with prejudice* the charges that the government seeks to prosecute here. A year after the date the offenses are alleged to have occurred, and nearly a year before returning an indictment in this case, in June 2024, the government decided to prosecute the charges against Dremale Vanterpool in Superior Court. While doing so, the government made misrepresentations and late disclosures that resulted in a denial of Mr. Vanterpool's right to a speedy trial. As a sanction, the Superior Court released Mr. Vanterpool pretrial and took under consideration defense motions to dismiss the charges with prejudice. While the Superior Court was considering those motions, in an effort to avoid sanctions, the government moved the charges to this Court. Mr. Vanterpool, through undersigned counsel, respectfully moves this Honorable Court to deny the government's efforts to avoid the consequences of its misconduct and to dismiss the charges here with prejudice, just as the Superior Court has now done. The Court should do so because the government's conduct violated Mr. Vanterpool's constitutional rights to a speedy trial and due process and his rights under Federal Rule of Criminal Procedure 16. Even if the Court finds that the government's conduct did not rise to the level of a constitutional violation, the government's conduct warrants the exercise of the Court's supervisory powers to dismiss the charges with prejudice.

## Factual and Procedural Background

On June 7, 2023, police arrested Mr. Vanterpool on an allegation that he unlawfully possessed a firearm and then took him to the Superior Court of the District of Columbia, where prosecutors chose not to file charges and released Mr. Vanterpool. More than a year later, on June 26, 2024, the government sought, and a Superior Court grand jury returned, an indictment in Superior Court, charging Mr. Vanterpool with possession with intent to distribute cocaine while armed, possession of a firearm in commission of drug trafficking, unlawful possession of a firearm, and related charges based on the June 7, 2023 arrest. *See* Exhibit 1 (Superior Court docket). The Superior Court issued a warrant for Mr. Vanterpool's rearrest on the charges. *Id.* That warrant was executed on August 1, 2024, and Mr. Vanterpool was again taken to Superior Court, where the court ordered him held without bond. *Id.*

Because he was detained, trial was set for December 2, 2024. *Id.* Beginning in September 2024, defense counsel made repeated requests for police body-worn camera (BWC) videos related to Mr. Vanterpool's arrest. Government counsel—not the Assistant United States Attorney (AUSA) assigned to the case before this Court—made multiple demonstrably false representations about the existence of BWC videos, representing that no BWC footage existed, apart from one video that had been disclosed. *See, e.g.,* Exhibit 2 at 3 (Oct. 10, 2024 status hearing, government counsel represented that only one clip of BWC video existed and she was exploring whether others were deleted); Exhibit 5 at 2-3 (outline defense requests and multiple government representations that no BWC footage existed). On November 1, 2024, Superior Court defense counsel filed a motion for sanctions for the failure to preserve BWC videos. *See* Exhibit 3 (Motion for Rule 16 Sanctions). At a hearing on November 20, 2024, the Superior Court again ordered the government to turn over all outstanding discovery. *See* Exhibit 1 (docket

entry Nov. 20, 2024). On November 23, 2024, Superior Court defense counsel filed a Motion to Dismiss for *Brady* Violations due to the late disclosure of exculpatory information (unrelated to the BWC video issue) that prejudiced the ability of the defense to prepare for trial. *See* Exhibit 4. On November 27, 2024, just days before the trial date, government counsel admitted that one BWC video had been deleted. *See* Exhibit 5 at 3. On November 30, 2024, defense counsel filed a Renewed Motion for Rule 16 Sanctions for Admitted Destruction of Body Worn Camera Footage. *See* Exhibit 5. On December 1, 2024, Superior Court defense counsel filed a Motion to Dismiss Indictment with Prejudice for Government's *Napue* Violation, based on misconduct in the presentation of the case to the grand jury (unrelated to the BWC and *Brady* violations). *See* Exhibit 6.

On the trial date, December 2, 2024, Superior Court Judge Heidi Pasichow addressed the issues raised by the defense, and the government moved to continue the trial to respond to the defense motions and to search for additional BWC videos, videos that defense counsel had been requesting for months. *See* Exhibit 7 (transcript of Dec. 2, 2024 Superior Court hearing). After hearing extended arguments, Judge Pasichow continued the trial, and as a sanction for the government's misconduct, released Mr. Vanterpool to the Pretrial Services Agency's High Intensity Supervision Program (HISP). *See Id.* at 65. The Court held the defense motion to dismiss in abeyance and set a briefing schedule for the government to respond to the defense motions. *Id.* at 66. Judge Pasichow characterized the Government's ever-changing representations about the existence or non-existence of BWC footage as "mak[ing] it virtually impossible for the defense to represent their clients with due diligence." *Id.* at 65.

Following the December 2, 2024 trial date, the government produced 10 additional BWC videos and acknowledged that four other videos had been deleted, but opposed the defense

motions for additional sanctions. *See* Exhibit 8 (discovery letter dated December 30, 2024);
Exhibit 9 (government opposition to motions). The productions made after the December 2, 2024
trial date highlighted the government's misrepresentations prior to the trial date, as set out in a
renewed Motion to Dismiss filed in Superior Court on February 3, 2025. *See* Exhibit 10. The
filing explained that before the December 2, 2024 trial date, the government represented on at
least seven occasions that only one BWC video existed. *Id.* at 2. Had the government adequately
and truthfully responded to the defense requests for BWC videos when the request was first
made in September 2024, Mr. Vanterpool would have had his trial in Superior Court on
December 2, 2024. The defense motion sought dismissal as a sanction due to the failure of
previous sanctions to deter the same AUSA (again, not the AUSA now assigned to this case) in
another matter. *See* Exhibit 9 at 4-6 (explaining that sanctions were imposed on AUSA in
another matter days before AUSA again represented that BWC videos in this case did not exist).
The government filed a sparce four-page opposition to the renewed motion to dismiss on
February 17, 2025. *See* Exhibit 11.

On February 24, 2025, the Superior Court scheduled a hearing on the motion to dismiss
for June 13, 2025. On April 2, 2025, Mr. Vanterpool moved to modify the conditions of his
release in Superior Court by eliminating the condition that he participate in HISP. A hearing on
that motion was scheduled for May 5, 2025, and the hearing on the motion to dismiss was moved
to July 11, 2025, because the case was assigned to a calendar that was transferred to a new judge.

Rather than risk the results of the motion to dismiss at the July 11, 2025 hearing, the
government decided to attempt to dodge the consequence of its actions altogether by filing
charges in federal court before the Superior Court could address the motion to dismiss. During
the more than five months that Mr. Vanterpool was detained pending trial between August and

4

December 2024, and throughout the months that followed as the parties continued to litigate the motion to dismiss, the government—having chosen a year earlier to present the case to a Superior Court grand jury rather than a federal grand jury—never suggested any intent to move the charges to federal court. Nonetheless, after the hearing on the motion to dismiss was scheduled, on April 30, 2025, the government filed a complaint in the instant matter charging the same offenses that were pending in Superior Court.

At the May 5, 2025 Superior Court hearing on Mr. Vanterpool's bond review motion, the Superior Court brought to the attention of defense counsel an outstanding warrant for Mr. Vanterpool's arrest. With the involvement of the government, the U.S. Marshal's Service, and counsel for both Mr. Vanterpool and co-defendant Torrance Brock, the Superior Court attempted to determine the basis for the warrant and when it was issued. Throughout that conversation, government counsel failed to inform the Superior Court that on April 30, 2025, the government filed a complaint in this matter, levelling the very same allegations at issue in Superior Court, and based on that complaint, obtained the warrant, despite Mr. Vanterpool's compliance with conditions of release in Superior Court. Instead, the government counsel (again, not the same AUSA now assigned to this case) watched as United States Marshals arrested Mr. Vanterpool on the warrant for the very same charges for which the Superior Court released Mr. Vanterpool based on the prosecution's misconduct, saying nothing and leaving the Superior Court with the false impression that new charges were filed against Mr. Vanterpool.

Later that day (May 5, 2025), the Marshals brought Mr. Vanterpool before Magistrate Judge G. Michael Harvey for his initial appearance in this matter. The government, without noting that Mr. Vanterpool was released in Superior Court as a sanction for government conduct, again sought Mr. Vanterpool's detention on the charges stemming from the June 7, 2023 arrest.

After learning that Mr. Vanterpool had been on release for the same charges, without incident, for more than five months, undersigned counsel requested an immediate hearing on the government's motion for detention. Judge Harvey agreed, held the hearing, and ordered Mr. Vanterpool released on conditions.

Although Mr. Vanterpool was released that same day, the government's tactics prejudiced him by further delaying his trial and delaying his release from HISP. At the hearing in Superior Court on May 5, 2025, the judge indicated his inclination to grant the motion to modify conditions of release and remove Mr. Vanterpool from HISP but declined to do so because the basis for the warrant was unknown to the Superior Court and defense counsel—because the government concealed the fact that the warrant was based on the same charges. Instead, Mr. Vanterpool was released by Judge Harvey on stricter conditions. He remained on those conditions for two and a half additional months, until July 22, 2025, when this Court modified the conditions.

For ten days following Mr. Vanterpool's initial appearance before Judge Harvey in this matter, the government allowed both the matter before Superior Court and this matter to remain pending. On May 15, 2025, the government filed a motion to dismiss the charges in Superior Court without prejudice. Mr. Vanterpool, through counsel, filed an opposition the same day, seeking dismissal with prejudice, consistent with the previously filed and still pending motion to dismiss based on the prosecutor's misrepresentations regarding BWC videos. *See* Exhibit 11 (Superior Court Opposition to Dismissal without Prejudice).

At the hearing on July 11, 2025, the Superior Court dismissed the case before it *with prejudice*. Nonetheless, the government continues to seek to avoid sanctions for its misconduct

in Superior Court by pursuing the same charges before this Court. This Court should deny that effort and dismiss the charges with prejudice, as the Superior Court did.

**Argument**

**I.   THE GOVERNMENT'S FAILURE TO TIMELY DISCLOSE EVIDENCE AND DECISION TO MOVE CHARGES TO FEDERAL COURT TO AVOID SANCTIONS VIOLATED MR. VANTERPOOL'S RIGHT TO A SPEEDY TRIAL**

The Sixth Amendment to the United States Constitution guarantees every criminal defendant the right to a speedy trial.  The government has an "affirmative constitutional obligation to try the defendant in a timely manner," and "must pursue the defendant with reasonable diligence from his indictment to his arrest." *United States v. Fernandes*, 618 F. Supp. 2d 62, 68 (D.D.C. 2009) (internal quotation marks omitted) (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992); *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997)). When a pretrial delay occurs, the burden is on the government to explain the delay.  *Id.*

The Supreme Court has identified four factors for courts to consider when determining whether the government has violated a defendant's Sixth Amendment right to a speedy trial: "Length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Barker v. Wingo*, 407 U.S. 538, 530 (1972); *see also Doggett v. United States*, 505 U.S. 647, 651 (1992) (relevant questions are: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for the delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result").

An assessment of these factors in this case demonstrates that the government failed to provide Mr. Vanterpool with a speedy trial as the Constitution requires. First, more than fourteen months have passed since the government charged Mr. Vanterpool by indictment in Superior

Court. The Supreme Court has suggested that such a delay of more than a year is "presumptively prejudicial." *Doggett*, 505 U.S. at 651-52 & n.1 (noting that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year," and finding eight-and-a-half-year delay between indictment and arrest violated Sixth Amendment); *see also United States v. Fernandez*, 618 F. Supp. 2d 62, 74 (23-month delay presumptively prejudicial and government failed to satisfy obligation to provide speedy trial, requiring dismissal of indictment). Here, but for the government's failure to timely produce evidence—and false representations that evidence did not exist—Mr. Vanterpool would have had his trial in Superior Court on December 2, 2024.

Second, the delay is attributable solely to the government. The government sought and obtained a continuance of the December 2, 2024 trial date to do what it should have done months earlier. Then, as motions to dismiss were pending, the government unilaterally moved its prosecution of the charges to this Court, causing further delay by requiring new counsel and restarting the process.

The third factor—defendant's assertion of the right to a speedy trial—does not weigh in favor of the government. Mr. Vanterpool did not waive his right to a speedy trial in Superior Court. Instead, he sought to have the trial within the time limits of the Superior Court Rules. *See* Exhibit 2 at 8.

The fourth factor, prejudice to the defense, weighs heavily against the government. As the *Doggett* Court recognized, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify," and "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. 654, 656.

II.    **GOVERNMENT DESTRUCTION OF EVIDENCE VIOLATED DUE PROCESS AND WARRANTS DISMISSAL OF CHARGES**

The government waited more than a year after the date of Mr. Vanterpool's arrest on June 7, 2023, before obtaining an indictment in Superior Court on June 26, 2024. While doing so, the government failed to preserve evidence. Specifically, the government has represented that four videos from the cameras worn by of three Metropolitan Police Department Officers (Officers Joshua Hill, Conner Johnson, and Bryan Porter) and related to the arrest of Mr. Vanterpool and seizure of evidence were deleted on June 13, 2024. *See* Exhibit 8. The failure to preserve these videos has prejudiced Mr. Vanterpool.

Federal Rule of Criminal Procedure 16 requires the government to disclose videos that are within the government's possession and material to the defense. *See* Fed. R. Crim. Proc. 16(a)(1)(E). The D.C. Circuit has held that even before a "request for discovery is made, the duty of disclosure is operative as a duty of preservation. Only if evidence is carefully preserved during the early stages of investigation will disclosure be possible later." *United States v. Bryant*, 439 F.2d 642 (D.C. Cir. 1971), *abrogated on other grounds as recognized in United States v. Vega*, 826 F.3d 514, 533 (D.C. Cir. 2016).[1] *See also Allen v. United States*, 649 A.2d 548, 553 (D.C. 1994) ("The duty to produce discoverable evidence entails the antecedent duty to preserve that evidence," meaning that police officers were obliged to preserve the evidence notwithstanding

_____

[1] In *Bryant*, the D.C. Circuit imposed a "heavy burden" on the government to show that it had established "rigorous and systematic procedures designed to preserve all discoverable evidence gathered in the course of a criminal investigation," or risk sanctions. 439 F.2d at 652. As the Circuit recognized in *Vega*, the Supreme Court's decision in *Arizona v. Youngblood* limited *Bryant's* holding with respect to claims under the Due Process clause. In *Arizona v. Youngblood*, the Court concluded that the government's failure to preserve "potentially useful evidence" does not violate Due Process under the Fifth Amendment "unless a criminal defendant can demonstrate the Government's bad faith." *Vega*, 826 F.3d at 533 (interpreting *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)).

the absence of a defense request for discovery at that specific time). "If the duty of preservation had been met during the investigation, the duty of disclosure could have been fulfilled by the prosecutor." *Robinson v. United States*, 825 A.2d 318, 327 (D.C. 2003).

The evidence at issue here was within the possession, custody, and control of the government. *See United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005) (taking broad view of this criterion and stating that the prosecution must disclose evidence "in the possession, custody, or control of any Executive Branch agency or department," regardless of the original source of the document or other object); *Robinson*, 825 A.2d at 327 (D.C. 2003) (government has a duty to preserve material evidence "the police knew or should have known about, and could have obtained if requested promptly from another government agency.").

The videos are material to preparing Mr. Vanterpool's defense. Materiality "is not a heavy burden." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). Evidence is material "as long as there is a strong indication that it will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *Id*. (quoting *United States v. Felt*, 491 F. Supp. 179, 186 (D.D.C. 1979)); *see also United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (the materiality hurdle "is not a high one"). In determining what to disclose under Rule 16, "the government cannot take a narrow reading of the term 'material' . . . [n]or may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may or what may be material to its preparation." *Safavian*, 233 F.R.D. at 15. Rather, "Rule 16 is intended to provide a criminal defendant 'the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case.'" *Id*. (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989)).

Although the government must disclose Rule 16 evidence "only if such evidence enable[s] the defendant significantly to alter the quantum of proof in his favor," this is not a difficult standard to meet. *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996)) (internal quotation marks omitted). The D.C. Circuit explained that:

> [A] defendant in possession of such evidence may "alter the quantum of proof in his favor" in several ways: by preparing a strategy to confront the damaging evidence at trial; by conducting an investigation to attempt to discredit that evidence; or by not presenting a defense which is undercut by such evidence.

*Id*.; *see also id.* at 67 (providing illustrative example of how "it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths."). Videos from the scene of Mr. Vanterpool's arrest and the recovery of evidence are material.

When the government has failed to preserve evidence, the trial court has discretion to impose a range of sanctions, including dismissal. Fed. R. Crim. P. 16(d)(2) (noting options available to the court to remedy a failure to comply, including "enter any other order that is just under the circumstances."); *Marshall*, 132 F.3d at 69 ("The district court has wide discretion in imposing a sanction if it finds that Rule 16 has been violated."). The failure to preserve the videos in this case cannot be remedied through a continuance or preventing the government from introducing evidence. The videos have been destroyed. There is no sanction short of dismissal that will suffice to vindicate Mr. Vanterpool's discovery rights and prevent similar violations in the future. Moreover, there is no reasonable explanation for the government's failure to preserve. The government intended to indict Mr. Vanterpool and did so just two weeks after the videos were destroyed. The government should have taken steps to ensure all material evidence was preserved.

III.    **THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE DECISION TO BRING CHARGES IN FEDERAL COURT CONSTITUTES VINDICTIVE PROSECUTION**

Before Mr. Vanterpool exercised his constitutional right to seek sanctions based on prosecutorial misconduct in Superior Court and the Superior Court scheduled a hearing on that motion, the government made no effort to charge Mr. Vanterpool with federal offenses. The decision to do so was based on prosecutorial vindictiveness—that is an improper response to Mr. Vanterpool's exercise of his constitutional and statutory rights.

The phrase "'prosecutorial vindictiveness' . . . refers to a situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights." *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (affirming dismissals on grounds of prosecutorial vindictiveness) *(citing United States v. Goodwin*, 457 U.S. 368, 372 (1982)). "In other words, a prosecutorial action is 'vindictive' only if designed to penalize a defendant for invoking legally protected rights." *Meyer*, 810 F.2d at 1245. As the D.C. Circuit has explained:

> The Supreme Court has established two ways in which a defendant may demonstrate prosecutorial vindictiveness. First, a defendant may show "actual vindictiveness" – that is, he may prove through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights. *See* [*Goodwin*, 457 U.S.] at 380-81, 384 & n.19 . . . . This showing is, of course, exceedingly difficult to make. Second, a defendant may in certain circumstances rely on a presumption of vindictiveness: when the facts indicate "a realistic likelihood of 'vindictiveness[,]'" a presumption will arise obliging the government to come forward with objective evidence justifying the prosecutorial action. *See Blackledge v. Perry*, 417 U.S. 21, 27-29, 29 n. 7 . . . (1974). If the government produces such evidence, the defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred. But if the government fails to present such evidence, the presumption stands and the court must find that the prosecutor acted vindictively.

*Id.* Although in the pretrial context the government's "decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption[,] . . . when additional facts combine with this sequence of events to create such a realistic likelihood, a presumption will lie . . . ." *Id.* at 1246. Whether a prosecution is vindictive is determined by "focus[ing] on the conduct of the government as a whole, rather than on the conduct or retributive sentiments of a single prosecutor." *Id.* at 1248 (*citing Thigpen v. Roberts*, 468 U.S. 27, 31 (1984)).

Here, the government chose to proceed in Superior Court, prepared for trial in Superior Court, and but for the government's failure to produce evidence, Mr. Vanterpool would have had his trial in Superior Court. The government only move the case to federal court in response to the threat of sanctions in Superior Court based on Mr. Vanterpool's exercise of his constitutional and statutory rights. As in *Meyer*, the appropriate remedy for the vindictive prosecution in this case is the dismissal of all of the pending charges with prejudice. Any other remedy would "remove the deterrent effect of the doctrine of prosecutorial vindictiveness—a doctrine which the Supreme Court *designed* to be largely prophylactic in nature." *See Meyer*, 810 F.2d at 1249 (emphasis in original) (*citing Blackledge v. Perry*, 417 U.S. 21, 26 (1974)).

## IV.    GOVERNMENT'S MISCONDUCT CONDUCT WARRANTS EXERCISE OF SUPERVISORY POWERS TO DISMISS CHARGES

The combination of the government's failure to preserve evidence, misrepresentations about the existence of BWC videos before the Superior Court, and vindictive decision in respond to Mr. Vanterpool's request for sanctions by moving the charges to federal court warrant dismissal. The government's conduct here constitutes an attempt to distort the integrity of the judicial process, warranting dismissal as a "prophylactic tool for discouraging future actions of the same nature." *United States v. Houghton*, 554 F.2d 1219, 1224 (1st Cir. 1977); *See Cf.*

*United States v. Williams*, 504 U.S. 36, 46 (1992) (supervisory power of the court can be used to dismiss indictment for grand jury misconduct that violates rules drafted by the Supreme Court and approved by Congress to ensure integrity of the grand jury).

The Court should consider that the offenses charged here were dismissed with prejudice in Superior Court pursuant to Superior Court Rule 48. *See* Exhibit 1. Superior Court Rule 48 is analogous to Federal Rule of Criminal Procedure 48. *See Ferrell v. United* States, 990 A.2d 1015, 108-19 (D.C. 2010). The rule "allow[s] courts to consider the 'public interest, fair administration of criminal justice and preservation of judicial integrity'" in determining whether to grant a dismissal without prejudice. *United States v. Poindexter*, 719 F. Supp. 6, 10 n. 10 (D.D.C. 1989) (quoting *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988)); *see also United States v. Borges*, 153 F. Supp. 3d 216, 219 (D.D.C. 2015) (same). Requiring the government to obtain leave of court to dismiss an indictment and authorizing courts to dismiss with prejudice when appropriate prevents prosecutorial harassment by "charging, dismissing, and recharging." *Rinaldi v. United States*, 434 U.S. 22, 30 n.15 (1977); *see also United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) ("The primary concern [of Rule 48(a)] . . . was that of protecting a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution.").

That is precisely what occurred here. The government chose to charge Mr. Vanterpool in Superior Court but failed to preserve evidence, violated Mr. Vanterpool's rights to discovery causing a delay in trial, failed to turn over evidence, was sanctioned, and then moved to dismiss the case to avoid the additional sanction of dismissal. While initially seeking dismissal without prejudice, on the date of the hearing on the defense motion to dismiss as a sanction and motion to

dismiss with prejudice, the government strategically agreed to dismissal with prejudice— avoiding any specific findings by the Superior Court regarding the government's misconduct and apparently hoping that without specific findings this Court would overlook its misconduct in Superior Court.

Federal courts in this jurisdiction have dismissed cases with prejudice in circumstances like those presented in Superior Court in this case. *See United States v. Pitts*, 331 F.R.D. 199 (D.D.C. 2019) (dismissing with prejudice where government failed to timely obtain DNA testing consistent with court's discovery order and sought dismissal to obtain testing and rebring charges); *United States v. Borges*, 153 F. Supp. 3d 216, 220 (D.D.C. 2015) (dismissing with prejudice where government sought dismissal without prejudice in the hope that witness problem would later be cured); *United States v. Poindexter*, 719 F. Supp. 6 (D.D.C. 1989) (dismissing with prejudice charges government sought to dismiss without prejudice because classified information precluded presentation of evidence, finding that allowing government such tactical advantage would be harassment). As the court in *Poindexter* noted, Rule 48 "has the effect of granting authority to the court in exceptional cases to reject a dismissal without prejudice— which would allow re-prosecution—if this would result in harassment of the defendant or would otherwise be contrary to the manifest public interest." 719 F. Supp. at 10; *see also Pitts*, 331 F.R.D. at 2023 (dismissal with prejudice appropriate "if the reason for the dismissal is to gain a tactical advantage or if the reprosecution of the defendant would otherwise be contrary to the manifest public interest."). The government strategically avoided the Superior Court making a similar finding by agreeing to dismissal with prejudice, and now seeks to use its unique authority to prosecute cases both in Superior Court and before this Court to gain a tactical advantage. This Court should use its supervisory power to prevent this harassment.

Although the D.C. Circuit has found that a dismissal with prejudice in Superior Court does not bar prosecution in federal court, that decision was based on a dismissal with prejudice that was "intended merely to yield jurisdiction to the federal district court[.]" *See United States v. Lindsey*, 47 F.3d 440, 444 (1995). In *Lindsey*, there was no allegation of any delay in bringing the charges from Superior Court to federal court and no allegation that the charges were brought to federal court to avoid sanctions in Superior Court, as the government did here. In *Lindsey*, the defendant argued that the prosecution in federal court following a dismissal in Superior Court with prejudice violated the Double Jeopardy Clause. That is not the issue here. Here, the government sought a dismissal in Superior Court with the intent of avoiding pending sanctions. The Superior Court dismissed with prejudice, and this Court should find that the government's conduct warrants dismissal here too.

### Conclusion

For the foregoing reasons, the Court should do as the Superior Court has done and dismiss the charges against Mr. Vanterpool with prejudice.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500