**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Case No. 25-138-1 (RJL) |
| | ) |
| DREMALE VANTERPOOL, | ) |
| | ) |
| Defendant. | ) |

<u>**MEMORANDUM OPINION**</u>
March ᵃⁿ, 2026 [Dkt. #34]

Before the Court is defendant Dremale Vanterpool's motion to dismiss. He asks the Court to dismiss the charges against him, arguing that the Government violated his constitutional right to a speedy trial and his statutory rights under Federal Rule of Criminal Procedure 16 by failing to preserve and produce relevant evidence. He also contends that the Government's decision to bring federal charges against him after dismissing nearly identical charges against him in the D.C. Superior Court was vindictive. Absent a finding of a constitutional violation, Vanterpool asks the Court to exercise its supervisory powers to dismiss the charges with prejudice. After careful consideration of the parties' briefing, oral argument, and the relevant law, I will **DENY** Vanterpool's motion to dismiss. However, because Vanterpool's arguments have considerable merit, the Court reserves judgment on whether to impose a sanction short of dismissal at a later date.

## I.   BACKGROUND

The underlying alleged criminal conduct in this case took place on June 7, 2023. *See* Criminal Complaint Statement of Facts ("Compl.") [Dkt. #1-1]. That afternoon,

Dremale Vanterpool and Torrance Brock[1] were driving together in a grey Nissan Rogue on North Capitol Street in northwest Washington, D.C. *Id.* at 1. At approximately 2:51 p.m., U.S. Capitol Police ("USPC") were alerted to a license plate hit for a car wanted in connection with three armed robberies matching the make, model, color, and license plate of the car that Vanterpool was driving. *Id.* USPC officers attempted to initiate a traffic stop, but the car failed to come to a complete stop, and a foot chase ensued. *Id.*

During the chase, one USPC officer observed Vanterpool holding his waistband consistent with concealing a weighted object in a manner characteristic of being armed. *Id.* at 2. He also saw Vanterpool toss a white baseball-sized shape object over a fence. *Id.* The officer was able to take Vanterpool into custody by 2:57 p.m. As relevant here, USPC did not wear body-worn cameras ("BWC"). Officers from the Metropolitan Police Department ("MPD")—who did have BWC—responded to the scene after the initial arrest. They arrived on the scene by 3:01 p.m., as Brock and Vanterpool were being arrested.

Officers retraced the flight path and nearby areas to look for weapons and contraband. They located a firearm, a discarded cell phone, a New York Yankees hat, and a baseball-sized clear plastic bag containing a white rock-like substance and white powdery substance. *Id.* at 3–4. The police also searched Vanterpool's person and recovered a digital scale from his left pocket, $605 in cash, two cellphones, and a clear bag containing a purple powdery substance. *Id.* at 5. Subsequent lab testing revealed that the solid white and

---

[1] Defendant Brock was charged in the same federal complaint and indictment. However, proceedings against Brock are currently stayed, and the Court has severed the defendants. *See* Minute Orders on January 27, 2026, and January 29, 2026. Thus, the Court's opinion focuses on the motion to dismiss the case against Defendant Vanterpool alone.

powdery white substance contained cocaine and the purple substance contained fentanyl and cocaine. *Id.* at 8. Later that evening, in responding to a tip, officers located a gun in the backyard close to where Vanterpool was arrested. *Id.* at 5. Subsequent DNA testing yielded strong evidence that Vanterpool had handled one of the recovered guns. *Id.* at 7.

The police arrested Vanterpool several weeks later on June 23, 2023. However, the Government decided not to file charges and released him. Then, more than a year later, on June 26, 2024, the Government brought charges against him in the Superior Court of the District of Columbia. *See United States v. Vanterpool*, Case No. 2024CF2006276 (D.C. Super. Ct.). Vanterpool was charged with possession with intent to distribute cocaine while armed, possession of a firearm in commission of drug trafficking, unlawful possession of a firearm, and other related charges. *See* Superior Court Docket [Dkt. #34-1]. The Superior Court issued a warrant for Vanterpool's arrest, which was executed on August 1, 2024. *Id.* The Superior Court ordered him held without bond. *Id.*

Trial was set for December 2, 2024. In the leadup to trial, defense counsel made multiple requests for police BWC videos relevant to the case against Vanterpool. *See* Motion to Dismiss ("Mot.") [Dkt. #34] at 2. The Government disclosed one relevant BWC video in October. *See* Dec. 30, 2024 Discovery Letter ("Discovery Letter") [Dkt. #34-8] at 2. In a pretrial hearing, Government counsel said it would investigate whether other BWC videos may have been deleted. *See* Oct. 10, 2024 Tr. [Dkt. #34-2] at 4.

On November 1, 2024, defense counsel filed a motion for sanctions for the failure to preserve BWC videos since the Government had failed to provide an update. *See* Motion for Rule 16 Sanction [Dkt. #34-3]. On November 18, 2024, the Government represented

3

that all existing BWC had been turned over and that no BWC had been deleted. *See* Gov't's Opposition to Motion for Rule 16 Sanction [Dkt. #43-8] at 6. Then, on November 27, 2024, the Government admitted that one BWC video *had* been deleted. *See* Discovery Letter at 2. Defense counsel filed a renewed motion for Rule 16 sanctions. *See* Renewed Motion for Rule 16 Sanction [Dkt. #43-9].

On December 2, 2024—the day trial was set to begin—the Government disclosed that an additional relevant BWC clip had been deleted. *See* Discovery Letter at 2. The Superior Court judge admonished the Government for the late disclosure. *See* Dec. 2, 2024 Tr. [Dkt. #34-7] at 9–17. The Government then moved to continue the trial to respond to the defendant's motions and to search for additional BWC videos. *See id.* at 63–65. Vanterpool's counsel opposed the continuance because Vanterpool was being detained. *Id.* at 75–76. The Superior Court judge continued the trial, and as a sanction for the Government's conduct, released Vanterpool to the Pretrial Service Agency's High Intensity Supervision Program. *Id.* at 66. The court, however, declined to dismiss the case at that juncture. *Id.*

After the December 2, 2024, trial date passed, the Government produced ten additional BWC videos and acknowledged that four other videos had been deleted. Discovery Letter at 2. The defense filed a renewed motion to dismiss on February 3, 2025, seeking dismissal, in part, due to the Government's late disclosure of BWC and prior representations that only one BWC video existed. Renewed Mot. to Dismiss [Dkt. #34-10]. A hearing on the motion to dismiss was set for July 11, 2025.

4

Before the Superior Court held a hearing or ruled on the motion to dismiss, on April 30, 2025, the Government filed a complaint in federal court for the same underlying conduct, charging Vanterpool with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of 18 U.S.C. § 922(g)(1); one count of Unlawful Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a) and (b)(1)(C); and one count of Using, Carrying, and Possessing a Firearm During and in Relation to a Crime of Violence or a Drug Trafficking Offense in violation in violation of 18 U.S.C. § 924(c)(1)(A)(i). Criminal Complaint [Dkt. #1] at 1. Vanterpool was arrested on May 5, 2025, and was released on conditions the same day. On May 14, 2025, a federal grand jury returned an indictment against Vanterpool charging him with identical offenses as in the complaint. *See* Indictment [Dkt. #15].

On May 15, 2025, the Government filed a motion to dismiss the charges in Superior Court without prejudice. *See* Superior Court Docket at 9. On July 11, 2025, the Government orally amended the Government's motion to dismiss *with* prejudice, which the Superior Court granted. *See* July 11, 2025 Tr. [Dkt. #43-10] at 12. At the hearing on the motion to dismiss, the Superior Court judge explicitly noted that the "issue of [Government] misconduct" would be "litigated across the street" in this Court. *Id.* at 7–8.

On September 16, 2025, Vanterpool filed a Motion to Dismiss in this Court. The Government filed a brief in opposition, ("Opp.") [Dkt. #43], and Vanterpool filed a reply brief, ("Reply") [Dkt. #77-1]. The Court held argument on January 29, 2026, and ordered supplemental briefing. Both sides filed supplemental briefs. *See* Gov't's Supplemental

Brief ("Gov't's Supp.") [Dkt. #83]; Vanterpool's Supplemental Brief ("Def.'s Supp.") [Dkt. #84]. The motion is now ripe.

## II.    LEGAL STANDARDS

### A.    Sixth Amendment

The Sixth Amendment promises that criminal defendants "shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Since this guarantee is "necessarily relative," alleged violations are assessed based on a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Vermont v. Brillon*, 556 U.S. 81, 89–90 (2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Courts must consider several factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 88 (quoting *Wingo*, 407 U.S. at 530).

### B.    Federal Rule of Criminal Procedure 48

Federal Rule of Criminal Procedure 48(b) provides that a "court may dismiss an indictment . . . if unnecessary delay occurs in . . . bringing a defendant to trial." Fed. R. Crim. P. 48(b)(3). The Rule is a recognition of "the inherent power of the court to dismiss a case for want of prosecution." *Mann v. United States*, 304 F.2d 394, 398 (D.C. Cir. 1962). Dismissal under Rule 48(b) is strong medicine that should be applied "only in extreme circumstances." *United States v. Parga-Rivas*, 689 F. Supp. 2d 25, 30 (D.D.C. 2009). In analyzing whether a delay warrants dismissal under Rule 48(b), courts consider the same factors relevant for assessing Sixth Amendment violations. *See United States v. Hensley*, 2024 WL 3673612, at *10 (D.D.C. Aug. 5, 2024).

## C.    Federal Rule of Criminal Procedure Rule 16

Federal Rule of Criminal Procedure 16 requires the Government to disclose evidence that is within the Government's possession and material to the defense. *See* Fed. R. Crim. P. 16(a)(1)(E). Materiality is "not a heavy burden." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). Evidence is material "as long as there is a strong indication that it will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *Id.*

## D.    Vindictive Prosecution

"The Due Process Clause prohibits prosecutors from 'upping the ante' by filing increased charges in order to retaliate against a defendant for exercising a legal right." *United States v. Slatten*, 865 F.3d 767, 798–99 (D.C. Cir. 2017) (internal citation omitted). To succeed on a claim of vindictive prosecution, a defendant must establish that any "increased charge was 'brought *solely* to penalize' [him] and could not be justified as a proper exercise of prosecutorial discretion." *Id.* "A defendant may prove prosecutorial vindictiveness by submitting either (i) evidence of the prosecutor's actual vindictiveness or (ii) evidence sufficient to establish a 'realistic likelihood of vindictiveness,' thereby raising a presumption the Government must rebut with objective evidence justifying its action." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (quoting *United States v. Myer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)).

7

## III.   ANALYSIS

### A.   Speedy Trial

Vanterpool argues that the Government's late disclosure of evidence in the Superior Court and the decision to charge him in federal court caused a violation of his Sixth Amendment right to a speedy trial. Mot. at 7–8. In the alternative, even absent a constitutional violation, Vanterpool asks the Court to dismiss the case for unnecessary delay under its supervisory powers. Reply at 2. Importantly, Vanterpool does not claim a Speedy Trial act violation pursuant to 18 U.S.C. § 3161. Our Circuit has held that it is an "unusual case" when the Act is followed but the Constitution is violated. *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014).

To assess Vanterpool's constitutional speedy trial and Rule 48 claims, I will consider the familiar *Barker* factors. After carefully weighing the factors, I have concluded that the delay here is not sufficiently egregious to warrant dismissal.

### 1.   Length of Delay

First, I will consider whether the delay "was uncommonly long" such that it is clear the Government has not proceeded "with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992). The Government brought charges in the Superior Court in June 2024[2], so the delay has now exceeded twenty months. Both sides agree that

---

[2] The parties agree that, for purposes of this motion, the Sixth Amendment right to a speedy trial was triggered when the Government filed charges in Superior Court. *See* Opp. at 18 n.8; Reply at 2. The Court will assume the same. The Court also appreciates that Vanterpool was originally arrested in June 2023, but that the Government, for unknown reasons, did not file any charges against him for over one year. *See* Def.'s Supp. at 2.

under our Circuit's caselaw, the length of the delay is presumptively prejudicial. Mot. at 8; Opp. at 19. But as courts in this Circuit have held, "[a]s a practical matter, once the threshold of more than one year is exceeded, the length of the delay does not strongly sway the ultimate outcome of the speedy trial issue." *United States v. Fernandes*, 618 F. Supp. 2d 62, 68 (D.D.C. 2009).

### 2.    Reason for the Delay

Vanterpool argues that the delay is attributable to the Government, largely for its failure to preserve and disclose relevant BWC evidence, as well its decision to transfer charges from the Superior Court to this Court. Mot. at 8; Reply at 5. He is right on both scores!    As for the BWC disclosure issue, there is no question that the Government's negligent failure to preserve some relevant BWC evidence caused the initial delay of the Superior Court trial. Indeed, the Government concedes as much. Opp. at 19–20. And the Government's decision to move the charges from the Superior Court to this Court also unquestionably contributed to the delay. But the parties fiercely dispute the true motivation for the change in forum.

The Government represents that Vanterpool's case was moved to federal court pursuant to policy changes under the new administration. On March 3, 2025, interim D.C. U.S. Attorney Edward Martin Jr. announced a "Make D.C. Safe Again" initiative, which directed prosecutors in the U.S. Attorney's Office for the District of Columbia to prioritize federal firearms violations and required the Office's Superior Court Division to review all pending cases for potential federal adoption. Part of the rationale for the initiative was "to crack down on gun violence, prioritize federal firearms violations, pursue tougher penalties

for offenses, and seek detention for federal firearms violators." Press Release, U.S. Attorney's Office for the District of Columbia (March 31, 2025). The Government represents that Vanterpool's case was screened and accepted for federal prosecution pursuant to that initiative. Opp. at 15.

Vanterpool, however, ascribes a more nefarious motivation behind the Government's decision to move transfer his case to federal court. He contends that the Government was *actually* seeking to gain a strategic advantage by switching forums to avoid impending sanctions in Superior Court, which would be an obvious abuse of the Government's dual charging authority in D.C. Reply at 9; Def.'s Supp. at 5–6. The Government naturally contests this accusation. The Government insists that it was *not*, in fact, seeking to avoid a sanction in the Superior Court, evidenced by the fact that the Superior Court judge expressly recognized that this prosecutorial misconduct claim would be litigated across the street in this Court. Oral Argument Tr. 20:2–8.

The defense is right that it is unusual for the Government to spend months litigating a case in Superior Court, only to agree to dismiss the case and instead bring nearly identical charges in federal court. *See* Oral Argument Tr. 35:17–24. And the Court shares the defense's concern that "[a]llowing the government to use its dual charging authority to evade responsibility for misconduct in the Superior Court and to then file what is essentially the same case in this Court would encourage delays and misrepresentations— whether negligent or intentional—in future cases." Def.'s Supp. at 6. To be sure, the Government cannot simply "dismiss and start anew across the street" to avoid the consequences of possible prosecutorial misconduct! *Id.*

10

Still, as Vanterpool admits, it is impossible to know the Government's true motivations for bringing federal charges. Oral Argument Tr. 35:17–24. And the Court is hesitant to speculate about the Government's charging strategy and the strength of other cases not before it. *See* Oral Argument 37:2–14. Regardless, it is fair to say that most of the delay is attributable to the Government. And this Court does not intend to let the Government escape the consequences for its unacceptable mishandling of BWC evidence!

### 3. Defendant's Assertion of the Right

The Government argues that this factor weighs strongly against Vanterpool because he did not make a claim of a speedy trial violation until filing the instant motion, requested or agreed to continuances in this Court, and requested a pretrial motion schedule on a variety of issues. Opp. at 20; Oral Argument Tr. 23:5–12. Vanterpool counters that he never waived his right to a speedy trial. Mot. at 8. Indeed, he asserted his right to a speedy trial in Superior Court and was ready to proceed on the first available trial date—December 2, 2024. Reply at 11. And the Court will not penalize Vanterpool for needing to obtain new counsel when the Government moved his case to federal court. That his new counsel needed time to review discovery and file necessary pretrial does not negate his assertion of his right to a speedy trial.

### 4. Prejudice to the Defendant

The Supreme Court has recognized that an excessive delay in trial can prejudice the defendant in a number of ways, including "oppressive pretrial incarceration," "anxiety and concern of the accused," and the "possibility that the [defendant's] defense will be impaired." *Wingo,* 407 U.S. at 532. But "the touchstone of the speedy trial guarantee is

11

the prevention of unnecessary or prolonged pretrial detention." *United States v. Gaffney*, 2025 WL 3123668, at *1. (D.D.C. Nov. 7, 2025). Vanterpool asserts that he has been prejudiced in several respects, particularly due to the anxiety he has experienced with federal charges hanging over his head. Mot. at 8; Reply at 11–12.

While the Court recognizes that Vanterpool has experienced significant anxiety and concern, it also appreciates that prejudice has been minimized because the Superior Court released Vanterpool from detention in December 2024. *See* Opp. at 20. Indeed, Vanterpool was incarcerated for only four months before the Superior Court released him as a *sanction* for the Government's failure to timely produce BWC. Since then, Vanterpool has been on court supervision and is permitted to travel for his employment. *Cf. United States v. Grabinski*, 2026 WL 125230, at *4 (D.D.C. Jan. 16, 2026) (defendant incarcerated for 43 months). As for any potential evidentiary prejudice, *neither* side has presented concrete details of lost witnesses or fading memories.

*   *   *

Considered together, the factors are somewhat mixed. There is no question that the Government is to blame for much of the delay due to its negligence in failing to preserve and timely produce relevant BWC evidence. And there is also no doubt that the Government's questionable decision to move the case to federal court caused further delay. But importantly, Vanterpool has already secured some relief for the Government's misconduct in Superior Court, since he has been out on release since 2024. And this is not the rare case where the Government has utterly failed to prosecute. *Cf. id.* Indeed, since the Government brought charges in this Court, it has diligently prosecuted this case,

12

meeting filing deadlines and working in good faith with the defense and the Court to move the case forward.

Thus, I do not find that the circumstances of this case warrant the extreme remedy of dismissal. However, the Court reserves the right to impose other sanctions short of dismissal, such as an adverse jury instruction or limitation on officer testimony, at a later date.

### B. Rule 16 Sanctions

Vanterpool argues that dismissal is independently warranted because the Government failed to preserve relevant BWC footage pursuant to its duty under Federal Rule of Criminal Procedure 16.[3] Mot. at 9.

The Government admits that at least five potentially relevant MPD BWC videos were mistakenly deleted. Opp. at 4. The deleted videos were recorded at or around the time of Vanterpool's arrest, and at or around the time one of the guns was recovered. *Id.* 5–8. And the parties agree that at least some of the BWC footage was "indisputably relevant," since three of the five BWC videos "would have captured some of the post-chase interactions." Opp. at 22–23; Reply at 12. The parties also seem to agree that there is *no* evidence that the Government deleted the BWC in bad faith. Rather, the videos were incorrectly tagged when the relevant officers uploaded the footage into the system. Opp. at 5. As a result of the tagging error, the videos were automatically deleted after a year

---

[3] Vanterpool also appeared to raise a due process argument in his opening brief, *see* Mot. at 9, but counsel clarified at oral argument that Vanterpool is making only a Rule 16 discovery violation claim, not a due process discovery violation claim. *See* Oral Argument Tr. at 36:7–21 ("[W]e are not making a due process discovery violation…We are asking for Rule 16 sanctions.").

13

pursuant to the department's retention policy. *Id.* at 22. No one in the U.S. Attorney's office viewed the videos prior to their deletion. *Id.* Indeed, no one will ever know what the five BWC videos would have shown.

However, the Government *has* made a substantial and meaningful production of 12 MPD BWC videos and 300 crime scene photographs that document the guns, drugs, discarded items, car, recorded interviews of the defendants, paperwork, drug and DNA reports, and seized evidence from four cellphones. Opp. at 3. And it is unclear, at best, what the defense might have developed from the deleted BWC that it cannot glean from the BWC that *was* disclosed.

When the Government has failed to preserve evidence, the Court has discretion to impose a wide range of sanctions. *United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998). Because there is no evidence of bad faith on the Government's part, and because the defense has made a fairly weak showing of materiality, the Court finds that the "draconian remedy" of dismissal is not appropriate here. *United States v. Jones*, 524 F.2d 834, 852 (D.C. Cir. 1975). However, the Court will reserve judgment on whether to impose a Rule 16 sanction short of dismissal at a later date.

### C. Vindictive Prosecution Claim

Vanterpool also argues that the indictment should be dismissed because the Government's decision to bring charges in federal court amounts to vindictive prosecution. Mot at 12–13. Specifically, Vanterpool argues that the Government vindictively brought federal charges against him in response to his motion to seek sanctions against the Government in Superior Court. *Id.*

14

Vanterpool does not attempt to show "actual vindictiveness," which "requires objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights." *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002). And frankly, his attempt to invoke the presumption of vindictiveness is on shaky ground.

Regardless, our Circuit has held that "[w]here the defendant provides evidence sufficient to support a presumption of vindictiveness, the burden shifts to the government to produce 'objective evidence' that its motivation in charging the defendant was lawful." *United States v. Meadows*, 867 F.3d 1305, 1312 (D.C. Cir. 2017) (quoting *Safavian*, 649 F.3d at 694). Here, the Government has done just that: it has proffered that Vanterpool was charged federally pursuant to the new administration's "Make D.C. Safe Again" gun initiative, which required the U.S. Attorney's D.C. Office to review all pending cases for potential federal adoption. *See* Opp. at 27–29. This qualifies as a consistent and nonretalitatory explanation for the Government's decision to bring federal charges and thus satisfies the Government's "minimal" burden. *Meadows*, 867 at 1312.

Undaunted, Vanterpool argues that the Government's admission that the initiative was designed to "more severely punish gun defendants" proves his vindictiveness claim. But that argument is foreclosed by this Circuit's decision in *United States v. Mills*, 925 F.2d 455 (D.C. Cir. 1991), *rev'd on other grounds in* 964 F.2d 1186 (D.C. Cir. 1992)). That case concerned a new administration's new policy to "crack down on drug-related crime in the nation's capital" by "bring[ing] more D.C. drug cases in federal court in order to take advantage of the stricter penalties available under the federal sentencing guidelines." *Id.* at 457. Our Circuit held that the Government's decision to transfer drug

15

cases from Superior Court to federal court pursuant to that initiative did not amount to vindictive prosecution where there was "no basis for finding that the transfer decisions were undertaken somehow to *penalize* the [defendants] for the exercise of their constitutional rights in the D.C. Superior Court." *Id.* at 463.  Such is the case here.

## IV.    CONCLUSION

In sum, the Court finds that no constitutional violation has occurred.  And the Court declines to exercise its extraordinary supervisory powers to dismiss the case. *United States v. Jones*, 433. F2d 1176, 1181–82 (D.C. Cir. 1970) ("The supervisory power doctrine is an extraordinary one which should be 'sparingly exercised.'"); *United States v. Slough*, 679 F. Supp. 2d 55, 61 (D.D.C. 2010) ("[T]he court may exercise this authority only in extreme circumstances.").  However, the Court reserves judgment on whether to impose a sanction short of dismissal at a later date!

For the foregoing reasons, Vanterpool's motion to dismiss is **DENIED.**

**SO ORDERED.**

RICHARD J. LEON
United States District Judge

16